IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

CNH CAPITAL AMERICA, LLC,

    Plaintiff,

vs.

LEROY KRAMER, JEFFREY
KRAMER AND STEVE KRAMER,

    Defendants.

No. C06-0046

ORDER ON MOTIONS FOR
PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. LEGAL STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . 3

IV. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A. Leroy Kramer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B. Jeffrey Kramer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C. Steve Kramer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V. DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT . . . . . 8

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION

On the 16th day of July, 2007, this matter came on for telephonic hearing on the Motions for Partial Summary Judgment (docket numbers 24, 25, 26) filed by Defendants, Jeffrey Kramer, Leroy Kramer, and Steve Kramer on May 2, 2007. Plaintiff appeared by

its attorneys, Scott L. Long and Rebecca A. Brommel. Defendants appeared by their attorney, William W. Graham.

## *II. PROCEDURAL BACKGROUND*

On April 4, 2006, Plaintiff CNH Capital America LLC filed a Complaint against Defendants Leroy Kramer, Jeffrey Kramer, and Steve Kramer. In its Complaint, Plaintiff alleges breach of contract against Leroy Kramer (Count I), breach of contract against Jeffrey Kramer (Count II), breach of contract against Steve Kramer (Count III), conspiracy against all Defendants (Count IV), aiding and abetting against all Defendants (Count IV),[1] and fraudulent misrepresentation against all Defendants (Count V). On June 6, 2006, Leroy Kramer filed his Answer, Affirmative Defenses, Counterclaim and Jury Demand. On June 8, 2006, Jeffrey Kramer filed his Answer, Affirmative Defenses, Counterclaim and Jury Demand. Steve Kramer also filed his Answer, Affirmative Defenses, Counterclaim and Jury Demand on June 8, 2006.

On June 15, 2006, Plaintiff filed a Motion to Dismiss Defendants' Counterclaims. On July 6, 2006, the Court entered an Order granting Plaintiff's Motion to Dismiss Defendants' Counterclaims. On July 12, 2006, Defendants filed a Motion for Relief from Order, requesting entry of an order relieving them from the Court's Order granting Plaintiff's Motion to Dismiss and allowing them to file and serve their Brief in Resistance to Plaintiff's Motion to Dismiss. On August 23, 2006, the Court denied Defendants' Motion for Relief.

On May 2, 2007, Defendants filed their instant Motion for Partial Summary Judgment. On May 22, 2007, Plaintiff filed Resistances to Defendants' motions. On June 8, 2007, Defendants each filed a Reply.

---

[1] Plaintiff, in its Complaint, sets forth its conspiracy and aiding and abetting claims as separate counts; however, it labels both claims as "Count IV."

2

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is genuine when a 'reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel West Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## IV. FACTUAL BACKGROUND

### A. Leroy Kramer

Beginning in March 2002, fourteen retail installment contracts were executed for farm equipment separately purchased from Walterman Implement, Inc. Each of the contracts contained the name and address of Leroy Kramer as the "purchaser" or "buyer" and a signature indicating Leroy Kramer accepted the terms of the contract.[2] The fourteen retail installment contracts were subsequently assigned to Plaintiff. Leroy Kramer denies

---

[2] The fourteen retail installment contracts included:
  (1) Contract dated March 7, 2002 for the purchase of a Case IH Tractor, serial number JEE0098765.
  (2) Contract dated April 16, 2003 for the purchase of a DMI Cultivator, serial number JFH0014277.
  (3) Contract dated April 16, 2003 for the purchase of a Case IH Planter, serial number CBJ0001974.
  (4) Contract dated July 15, 2003 for the purchase of a Case IH Header, serial number HAJ034423.
  (5) Contract dated October 20, 2003 for the purchase of a Case IH Header, serial number JJC0331155.
  (6) Contract dated January 27, 2004 for the purchase of a Case IH Planter, serial number CBJ0018486.
  (7) Contract dated January 27, 2004 for the purchase of a Case IH Planter, serial number CBJ0018489.
  (8) Contract dated April 30, 2004 for the purchase of a Case IH Tractor, serial number JAZ126150.
  (9) Contract dated June 23, 2004 for the purchase of a Case IH Tractor, serial number JAZ130731.
  (10) Contract dated June 23, 2004 for the purchase of a Case IH Tractor, serial number JAZ130648.
  (11) Contract dated December 1, 2004 for the purchase of two John Deere Tractors, serial numbers 1507 and 1118.
  (12) Contract dated December 13, 2004 for the purchase of a Case IH Combine, serial number JJC0274844.
  (13) Contract dated May 23, 2005 for the purchase of a Case IH Tractor, serial number JAZ134318.
  (14) Co-signed for Steve Kramer a contract dated April 30, 2002 for the purchase of a Case IH Tractor, serial number JEE0098792.

signing any of the retail installment contracts. Leroy Kramer further denies entering into any agreements to purchase any of the farm equipment listed on the retail installment contracts. However, Plaintiff received payments from Leroy Kramer on the retail installment contracts. Plaintiff also sent Leroy Kramer numerous correspondence regarding the contracts to his home address in 2004 and 2005.[3] Plaintiff claims that Leroy Kramer is currently in default under the terms of the retail installment contracts.[4] Specifically, Plaintiff asserts that Leroy Kramer has failed to make timely payments and failed to maintain the equipment/collateral secured by the retail installment contracts at the location identified in the contracts.

### B. Jeffrey Kramer

Beginning in February 2003, three retail installment contracts were executed for farm equipment separately purchased from Walterman Implement, Inc. Each of the

---

[3] The record contains correspondence sent from Plaintiff to Leroy Kramer at his home on: February 6, 2004, February 10, 2004, March 31, 2004, November 4, 2004, January 9, 2005, March 27, 2005, May 12, 2005, May 18, 2005, May 23, 2005, July 27, 2005, and September 29, 2005.

[4] According to Plaintiff, as of December 2, 2005, Leroy Kramer owes the following outstanding balances on the fourteen retail installment contracts:
    (1)    $53,327.55 on the March 7, 2002 contract.
    (2)    $11,390.82 on the April 16, 2003 contract.
    (3)    $20,951.04 on the April 16, 2003 (Planter) contract.
    (4)    $19,706.36 on the July 15, 2003 contract.
    (5)    $15,686.58 on the October 20, 2003 contract.
    (6)    $58,220.50 on the January 27, 2004 contract.
    (7)    $58,220.50 on the January 27, 2004 (second Planter) contract.
    (8)    $78,345.72 on the April 30, 2004 contract.
    (9)    $98,282.61 on the June 23, 2004 contract.
    (10)    $98,292.61 on the June 23, 2004 (second Tractor) contract.
    (11)    $63,007.69 on the December 1, 2004 contract.
    (12)    $86,930.08 on the December 13, 2004 contract.
    (13)    $125,079.53 on the May 23, 2005 contract.
    (14)    $50,504.59 on the co-signed April 30, 2002 contract.

contracts contained the name and address of Jeffrey Kramer as the "buyer" and a signature indicating Jeffrey Kramer accepted the terms of the contract.[5] The three retail installment contracts were subsequently assigned to Plaintiff. Jeffrey Kramer denies signing any of the retail installment contracts. Jeffrey Kramer further denies entering into any agreements to purchase any of the farm equipment listed on the retail installment contracts. However, Plaintiff received payments from Jeffrey Kramer on the retail installment contracts. Plaintiff also sent Jeffrey Kramer numerous correspondence regarding the contracts to his home address in 2004 and 2005.[6] Plaintiff claims that Jeffrey Kramer is currently in default under the terms of the retail installment contracts.[7] Specifically, Plaintiff asserts that Jeffrey Kramer has failed to make timely payments and failed to maintain the equipment/collateral secured by the retail installment contracts at the location identified in the contracts.

## C. Steve Kramer

Beginning in April 2002, four retail installment contracts were executed for farm equipment separately purchased from Walterman Implement, Inc. Each of the contracts

---

[5] The three retail installment contracts included:
- (1) Contract dated February 4, 2003 for the purchase of a Case IH Tractor, serial number JEE0035460.
- (2) Contract dated October 9, 2003 for the purchase of a Case IH Tractor, serial number JEE0097806.
- (3) Contract dated December 15, 2003 for the purchase of a Case IH Tractor, serial number JAZ130391.

[6] The record contains correspondence sent from Plaintiff to Jeffrey Kramer at his home on: June 20, 2004, September 13, 2004, June 6, 2005, July 27, 2005, and October 18, 2005.

[7] According to Plaintiff, as of December 2, 2005, Jeffrey Kramer owes the following outstanding balances on the three retail installment contracts:
- (1) $47,352.12 on the February 4, 2003 contract.
- (2) $83,864.31 on the October 9, 2003 contract.
- (3) $93,068.41 on the December 15, 2003 contract.

contained the name and address of Steve Kramer as the "buyer" and a signature indicating Steve Kramer accepted the terms of the contract.[8] The four retail installment contracts were subsequently assigned to Plaintiff. Steve Kramer denies signing any of the retail installment contracts. Steve Kramer further denies entering into any agreements to purchase any of the farm equipment listed on the retail installment contracts. However, Plaintiff received payments from Steve Kramer on the retail installment contracts. Plaintiff also sent Steve Kramer numerous correspondence regarding the contracts to his home address in 2004 and 2005.[9] Plaintiff claims that Steve Kramer is currently in default under the terms of the retail installment contracts.[10] Specifically, Plaintiff asserts that Steve Kramer has failed to make timely payments and failed to maintain the equipment/collateral secured by the retail installment contracts at the location identified in the contracts.

---

[8] The four retail installment contracts included:
- (1) Contract dated April 30, 2002 for the purchase of a Case IH Tractor, serial number JEE0098792.
- (2) Contract dated October 10, 2003 for the purchase of a Case Combine, serial number JJC0102060, and two Case Headers, serial numbers JJC0328699 and HAJ0003594.
- (3) Contract dated December 15, 2003 for the purchase of a Case IH Tractor, serial number JAZ130396.
- (4) Contract dated May 23, 2005 for the purchase of a Case IH Tractor, serial number JEE0099737.

[9] The record contains correspondence sent from Plaintiff to Steve Kramer at his home on: March 7, 2004, September 19, 2004, November 18, 2004, March 7, 2005, and July 27, 2005.

[10] According to Plaintiff, as of December 2, 2005, Steve Kramer owes the following outstanding balances on the four retail installment contracts:
- (1) $50,504.29 on the contract dated April 30, 2002.
- (2) $47,722.00 on the contract dated October 10, 2003.
- (3) $93,030.36 on the contract dated December 15, 2003.
- (4) $117,734.36 on the contract dated May 23, 2005.

## V. DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In Counts I, II, and III of its Complaint, Plaintiff claims breach of contract against Leroy Kramer (Count I), Jeffrey Kramer (Count II) and Steve Kramer (Count III). In its breach of contract claims, Plaintiff alleges that Defendants each performed or offered to perform all of the obligations under the retail installment contracts attributed to them by Plaintiff in Counts I, II, and III of its Complaint. According to Plaintiff, Defendants breached these contracts by failing to make timely payments, and failing to maintain the equipment at the location identified in the contracts. Defendants argue that they are entitled to partial summary judgment on Counts I, II, and III because they did not execute, sign, or authorize their signatures on any of the retail installment contracts.[11] Defendants assert that they had no knowledge of the contracts and, therefore, could not breach the contracts.

An essential element required in all contracts is mutual assent. *Magnusson Agency v. Public Entity Nat. Company-Midwest*, 560 N.W.2d 20, 26 (Iowa 1997) (citing *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 285 (Iowa 1995)). Mutual assent is generally given through an offer and acceptance. *Id.* "An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his [or her] assent to that bargain is invited and will conclude it.'" *Id.* (quoting Restatement (Second) of Contracts § 24 (1981)). "[A]n offer must also be certain of its terms and requirements." *Magnusson Agency*, 560 N.W.2d at 26 (citations omitted).

---

[11] It should be noted that Leroy Kramer did not move for partial summary judgment on the retail installment contracts marked as Exhibits B, C, E, and L in Plaintiff's Complaint. Jeffrey Kramer did not move for partial summary judgment on the retail installment contracts marked as Exhibits O and P in Plaintiff's Complaint. Steve Kramer did not move for partial summary judgment on the retail installment contract marked as Exhibit S in Plaintiff's Complaint. In addition, Plaintiff does not resist entry of summary judgment on Count I as to the retail installment contracts marked as Exhibits D and M in its Complaint.

Acceptance of the offer is also required for a binding contract. *Id.* (citation omitted). Defendants argue in this case that there was no assent or acceptance.

Plaintiff argues that even if Defendants did not personally sign the retail installment contracts, they partially performed and/or ratified the contracts by making payments under the contracts and being secretly reimbursed by Walterman Implement, Inc. for making those payments. In his deposition testimony, Leroy Kramer discussed how he paid Plaintiff on the retail installment contracts and how Walterman Implement, Inc. reimbursed him for his payments. Leroy Kramer's deposition testimony provides:

> A: . . . [Matt Lawson, an employee for Plaintiff] come to my farm and had a whole list of equipment; and he says, "Do you own this equipment?" And I looked down there; and I says, "I have this and this." I told him what I had. And I said, "I don't have any of this other stuff. . . ." I had no idea that all this equipment was in my name. . . .
> Q: You had no idea that that equipment was in your name?
> A: No. I had no idea there was contracts signed in my name.
> Q: Well, you received payment notices for that equipment, didn't you?
> A: Yes. I didn't pay much attention to them because it wasn't mine. And I faxed everything to Walterman.
> Q: They came to you address?
> A: Yes.
> Q: And they came in your name?
> A: Yeah.
> Q: And you made the payments?
>
> . . .
>
> A: Yes, I made the payment. [Walterman] brought the check to my house and we had to forward that money on to [CNH].

Appendix for Leroy Kramer at 23-24. (Leroy Kramer Deposition, p. 93, l. 19 - p. 94, l. 25)

Jeffrey Kramer also discussed how he paid Plaintiff on the retail installment contracts and how Walterman Implement, Inc. reimbursed him for his payments. Jeffrey Kramer's deposition testimony provides:

> Q: You started at some point receiving payment notices from Case Credit?
> A: Uh-huh. Yes, I did.
>
> . . .
>
> Q: Did you have any conversations with Leon Walterman or anybody at Walterman Implement regarding the payment notices that you received?
> A: When I received a notice, a lot of the time I would just -- I would take it to my dad's and fax it in through there. And if I would call and confirm that they received it, I might have; but I would say, "I received this in the mail. I'm sending it to you." And one of the secretaries that would receive the call would say "Okay. We'll take care of that. Thank you."
> Q: . . . Did you receive payment notices for equipment that you didn't have?
> A: Yes, I did.
> Q: And did you ever talk with anybody at Walterman Implement about the fact that you were receiving payment notices for equipment that you didn't have?
> A: I can't say that I talked -- They were aware of it by the way of, well, my father and Steve. We all had this. So [Walterman Implement, Inc. was] aware that these notices were going to come due and that I would fax mine in, and [Walterman] would deliver a check to make that payment.

Appendix for Jeffrey Kramer at 4. (Jeffrey Kramer Deposition, p. 28, l. 2 - p. 29, l. 11)

10

Steve Kramer also discussed how he paid Plaintiff on the retail installment contracts and how Walterman Implement, Inc. reimbursed him for his payments. Steve Kramer's deposition testimony provides:

> Q: . . . What other conversations have you had with Leon Walterman from and after, say, year-end of '03?
> A: I got equipment notices or payment notices; and I called him on, you know, what to do about them.
> Q: What did he tell you?
> A: He said he'd bring a check out and we'll -- you mail one off.
> Q: Did you ask him why you were receiving these payment notices?
> A: Yes.
> Q: What did he say?
> A: Well, he would say that, you know, "I'll take care of it. It was a mistake. I'll take care of it." He told me -- You know, one time he told me very similar to what he told Leroy, that "We're going to take this tractor somewhere else and lease it to someone else and they'll make your payments for you. They'll make that payment for you."
>
> . . .
>
> Q: You received a number of payment notices; is that right?
> A: Yes.
> Q: On equipment that you didn't have?
> A: Yes.

Appendix for Steve Kramer at 15 (Steve Kramer Deposition, p. 67, 1.10 - p. 68, 1. 13.

In regard to ratification of a contract, the Iowa Supreme Court has stated:

> A party to an agreement induced by fraud or deceit is held to the duty of electing either to execute or rescind the contract at the time of discovering the wrong, or within a reasonable time thereafter. . . . Taking any benefit or changing the condition of the property bought after learning of the fraud has been adjudged a waiver of the right to rescind.

11

*Staly v. McNerney*, 10 N.W.2d 584, 589 (Iowa 1943) (quotation omitted); *see also* Restatement (Second) of Contracts § 380 (1981). The Restatement provides:

> (2) The power of a party to avoid a contract for mistake or misrepresentation is lost if after he knows or has reason to know of the mistake or of the misrepresentation if it is non-fraudulent or knows of the misrepresentation if it is fraudulent, he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.

Restatement (Second) of Contracts § 380(2) (1981). Comment *a* to § 380 provides:

> *a. Ratification by affirmance.* A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract. Such action is known as "affirmance" and has the effect of ratifying the contract.

Restatement (Second) of Contracts § 380(2) (1981) cmt. *a*.

Plaintiff contends that even though Defendants claim the signatures on the contracts are forgeries and that they had no knowledge of the contracts, their actions of making payments on the retail installment contracts and accepting reimbursement for those payments from Walterman Implement, Inc., constitutes ratification or affirmance of the contracts. Plaintiff sets forth the following facts to support its assertion that Defendants, by their actions, ratified or affirmed the retail installment contracts: (1) Each Defendant received numerous payment notices and other correspondence from Plaintiff regarding the retail installment contracts; (2) each Defendant faxed the payment notices from Plaintiff to Walterman Implement, Inc. for the purposes of obtaining reimbursement for the payment amounts; and (3) each Defendant also faxed the other correspondence he received from Plaintiff in order to obtain information pertaining to the equipment he did not have under the retail installment contracts.

While Defendants deny signing or even having knowledge of the contracts, the evidence, when viewed in the light most favorable to Plaintiff, could support a finding that Defendants knew of the contracts and ratified or affirmed the contracts by making payments

on them. One who otherwise may avoid performance under a contract may forfeit that right by engaging in actions which ratify or affirm the contract. *See* Restatement (Second) of Contracts § 380(2) (1981) cmt. *a* ("A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract. Such action is known as "affirmance" and has the effect of ratifying the contract."). Thus, Defendants' actions of making payments on the retail installment contracts and accepting reimbursement for those payments from Walterman would support a finding that they affirmed or ratified the contracts.

The Court, having viewed the record in the light most favorable to Plaintiff, finds that Plaintiff has presented evidence that establishes genuine issues of material fact as to whether Defendants had knowledge of the retail installment contracts and whether they knowingly made payments on the contracts and accepted reimbursement from Walterman Implement, Inc. for those payments. The Court concludes that the doctrine of ratification or affirmation may be applicable here. Therefore, the court determines that Defendants' motions for partial summary judgment on Counts I, II, and III should be denied.

## VI. CONCLUSION

For the reasons set forth above, the Court concludes that Leroy Kramer's Motion for Partial Summary Judgment on Count I of Plaintiff's Complaint is denied, except as to the retail installment contracts marked as Exhibits D and M in Plaintiff's Complaint which is granted. Jeffrey Kramer's Motion for Summary Judgment on Count II of Plaintiff's Complaint is denied. Steve Kramer's Motion for Summary Judgment on Count III of Plaintiff's Complaint is denied.

## ORDER

**IT IS THEREFORE ORDERED** as follows:

The Motions for Partial Summary Judgment (docket numbers 24, 25, 26) filed by Defendants are **DENIED**, except summary judgment is **GRANTED** as to the retail installment contracts marked as Exhibits D and M in Count I of Plaintiff's Complaint.

DATED this 30th day of July, 2007.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA